**In re the Marriage of James C. COLEBERD, Petitioner–Respondent,**

v.

**Linda Ann COLEBERD, Respondent–Appellant. (Two Cases.)**

Nos. 20196, 20838.

Missouri Court of Appeals, Southern District, Division One.

Sept. 30, 1996.

Motion for Rehearing or Transfer Denied Oct. 22, 1996.

Application to Transfer Denied Dec. 17, 1996.

Elvin S. Douglas, Jr., Crouch, Spangler & Douglas, Harrisonville, for respondent-appellant.

Michael X. Edgett, Cason, Edgett & Mahan, Clinton, for petitioner-respondent.

BARNEY, Presiding Judge.

Respondent Linda Ann Coleberd (Wife) appeals the trial court's judgment dissolving her marriage to Petitioner James C. Coleberd (Husband).[1] The parties were married approximately 30 years and they have two emancipated children. At time of trial Wife was 54 and Husband was 57. Husband, a

---

1. We shall denominate the Appellant as Wife and the Respondent as Husband. We do so in the interest of clarity, although we realize their legal relationship may now be altered. We mean no disrespect.

physician, had recently suffered a heart attack. Husband's earnings at trial time approximated $129,000.00 a year, inclusive of benefits, while Wife earned approximately $40,000 a year as head nurse in a nursing home. Additionally, Husband receives income from his interest in Mark Twain Cave, Inc., a corporation operating a tourist attraction in Hannibal, Missouri. While Husband studied in medical school and during his internship wife worked outside the home, helping support the family.

Wife raises five points of trial court error in Case No. 20196. She contends that the court erred in finding and holding that: (1) Husband's corporate stock in Mark Twain Cave, Inc., was a non-marital asset; (2) Husband's inherited and gifted interest in the assets of a partnership (consisting primarily of real property being leased to Mark Twain Cave, Inc.) was a non-marital asset; (3) Wife had no interest in the real property on which the cave enterprise was operated even though, in 1990, Husband titled his interest in the property as a tenancy by the entirety with Wife; (4) Wife was not entitled to maintenance; and (5) the marital properties should be divided equally.

In Case No. 20838 Wife asseverates that the trial court erred in denying her motion for temporary maintenance and attorney fees during the pendency of this appeal. This Court consolidated the appeals but addresses them separately in this opinion.

## Case No. 20196
### NON–MARITAL ASSETS

The trial court awarded Husband non-marital properties consisting of 32.2 percent of the stock of Mark Twain Cave, Inc., together with all the real estate (being 32.2 percent of the totality of the real estate being leased to the corporation). The trial court then assessed Husband's combined interest in the stock of the corporation and the partnership assets, inclusive of the real estate, at $688,-174.00. Additionally, the trial court set off to Husband his interest in a duplex property

inherited from his mother with a net value of $37,500.00.

As her separate property, the trial court set off to Wife an Edward D. Jones account and a Merrill–Lynch account in the combined amount of approximately $50,000.00.

### MARITAL ASSETS

Wife received marital assets consisting of the marital home, a recreational cabin, a 1989 Cadillac, various furnishings and personal items, together with savings and retirement accounts, and an Internal Revenue Service refund check, all totaling $434,238.81. Included in this amount were debts allocated to Wife consisting of approximately $2,201.11 for miscellaneous charges and real estate taxes on the marital home and recreational cabin, together with the mortgage on the marital home in the amount of $113,679.57.

Husband received marital assets consisting of a 1990 Lincoln Towncar and a 1984 Ford F150, personal items and furnishings, his interest in a condominium, together with certain savings and retirement accounts, all totaling $434,238.81. Included in this total were debts in the approximate amount of $166,500.00, exclusive of his attorney fees. Additionally, Husband was allocated an indebtedness resulting from a failed business venture arising from the building and operating of a Holiday Inn motel complex in Clinton, Missouri. Industrial Development bonds had been issued in the sum of $3,900,-000.00 to raise money for the project and Husband guaranteed 45% of the issuance. The trial court found that the money generated from the foreclosure was inadequate to pay off an indeterminate amount of indebtedness now owed to the Federal Deposit Insurance Corporation (F.D.I.C.).[2]

No maintenance award was made to Wife although requested by her. However, the trial court awarded her attorney fees in the amount of $5,733.63.

### I.

The standard of appellate review is found in Rule 73.01(c), Missouri Rules of Civil Pro-

---

**2.** At trial there arose the question as to whether or not the statute of limitations, due to expire in April, 1996, would bar the ability of the F.D.I.C.

to pursue any collection efforts. The record is devoid of any further evidence relating to this matter.

cedure (1996) and is governed by the principles of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). This same standard of review applies to decrees of dissolution of marriage. *In re Marriage of Betz,* 880 S.W.2d 618, 619 (Mo.App.1994). "The decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* "The division of marital property is discretionary with the trial court and we must defer to the court's judgment unless it is an abuse of discretion." *Kettler v. Kettler,* 884 S.W.2d 729, 731 (Mo. App.1994). "Due regard is given to the trial court's determination on the credibility of witnesses." *In re Marriage of Gardner,* 890 S.W.2d 303, 304 (Mo.App.1994). "The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record." *Id.* at 304–05. "The trial judge, as the trier of fact, can disbelieve testimony even when uncontradicted." *Id.* at 305.

Wife's first three points center around the trial court's non-marital classification of Husband's 58/180th (32.2 percent) interest in the shares of stock of Mark Twain Cave, Inc., and the same proportionate interest in 350 acres of land on which is located the Mark Twain and Cameron Caves in Marion County, Missouri, upon which a tourist attraction has been operated by Husband's family since the 1920s.

Husband's legal interest in the personal and real property relating to the cave enterprise was acquired during the course of the marriage from gifts and inheritances derived from Husband's mother and aunt.

In late 1982 a partnership was formed under the name of Mark Twain Cave for the purpose of operating the cave. However, title to the real property was retained in the respective individual names of Husband, his brother and his cousin.

The partnership continued operating the tourist attraction and all operating expenses and improvements to the property were paid from earnings derived from the cave operations. Income was distributed annually to the partner-relatives. However, some of the earnings were retained by the partnership, as cash reserves for future needs of the cave enterprise.

On January 13, 1986, a corporation, Mark Twain Cave, Inc., was formed. It is not clear how many shares of stock Husband received, although it is certain that Husband received a 32.2 percent interest in the stock of the corporation.[3] By amendment to the partnership agreement, all of the operating assets of the partnership, including certain retained earnings or cash reserves, were transferred to the corporation. The real property upon which the concession was operated, and in which Husband had a 32.2 percent interest, was not conveyed to the new corporation. The ownership of the real property continued to be held in the individual names of Husband, his brother and his cousin until 1990. In that year Husband conveyed his interest in the real property into a tenancy by the entirety with his wife.

It is clear from the evidence that Wife never contributed any separate funds or assets to the cave operations and had never participated in either the partnership management or the corporate management thereafter. It is also clear that save for occasional partnership and board of directors' meetings, Husband did not participate in the day-to-day management of either the partnership or corporation.

■ In Point One, Wife asserts that the trial court erred in finding that the stock of Mark Twain Cave, Inc., was Husband's non-marital property. She argues that assets, consisting of earnings from the partnership's operating of the cave enterprise prior to incorporation, went into the formation of the corporation and consequently under the "source of funds" rule, she has a marital interest in the stock of the corporation.[4]

In her second point, she also asseverates that the trial court was in error when it determined that Husband's interest in the

---

3. The corporation was formed as a Sub Chapter S corporation.

4. *See,* generally, *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 824 (Mo. banc 1984).

assets of the Mark Twain partnership was non-marital property. She argues that although Husband initially acquired his interest in the partnership by gift and inheritance, his earnings from the partnership constituted marital income. She states, however, that not all of these earnings were distributed to the partners. Therefore, she contends that the accumulated assets that were not distributed to the parties constituted marital assets and, therefore, all of Husband's interest in the partnership thereby became marital property.

In her third point Wife argues that in 1990 her Husband gifted her a tenancy by the entirety interest in his interest in the 350 acres located in Marion County, Missouri. Therefore, she avers that Husband's interest in the real property, upon which the cave enterprise is operated, should be classified as marital property.

Being interrelated, the points are reviewed together.

"All property acquired by either spouse subsequent to the marriage, and prior to a decree of legal separation or dissolution is presumed to be marital property regardless of whether title is held individually or jointly." *Kettler,* 884 S.W.2d at 731; *see also* § 452.330.3.[5] "This presumption is overcome only by clear and convincing evidence that the acquired item is non-marital." *Kettler,* 884 S.W.2d at 731–32; *Barth v. Barth,* 790 S.W.2d 246, 251 (Mo.App.1990).

Section 452.330.2, however, lists several exceptions to this presumption. Among the exceptions are properties acquired by gift, bequest, devise or descent.[6]

There is little question that under § 452.330.2, when made, the gifts and inheri-

tances from Husband's relatives to Husband during the course of the marriage, ultimately amounting to a 32.2 percent interest in the 350 acres of land comprising the Mark Twain and Cameron Caves, together with any personal property used in connection with the cave partnership, constituted the separate property of Husband.

■ However, Husband's rental income derived from the pre–1982 and post–1982 partnerships' operation of the cave enterprise, as well as Husband's rental income earned from the leasing of his interest in the land to Mark Twain Caves, Inc., constituted marital property. *In re Marriage of Schatz,* 768 S.W.2d 607, 611 (Mo.App.1989). Any income received during the marriage from separate property is marital property. *Gardner,* 890 S.W.2d at 305.

In *Wilhelm v. Wilhelm,* 688 S.W.2d 381, 383 (Mo.App.1985), the Eastern District of this Court found that the trial court misapplied § 452.330.2 and .3, RSMo (Supp.1984), and reversed the trial court's holding that bank accounts containing rental income earned during the marriage, and certain corporate stocks purchased with that rental income were separate property.

■ *Drikow v. Drikow,* 803 S.W.2d 122, 126 (Mo.App.1990) teaches that interest earnings by one of the spouses on his separate property are marital property. Stock dividends earned on separate property are, likewise, marital property. *Id.* at 127.

In *Welch v. Welch,* 821 S.W.2d 560, 561 (Mo.App.1991), the court held that after marriage, all new contributions made to Husband's separate money fund created prior to marriage and dividends and income derived

---

**5.** All statutory references are to RSMo 1994.

**6.** Section 452.330.2 states:
  For purposes of sections 452.300 to 452.415 only, "**marital property**" means all property acquired by either spouse subsequent to the marriage except:
   (1) Property acquired by gift, bequest, devise, or descent;
   (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

   (3) Property acquired by a spouse after a decree of legal separation;
   (4) Property excluded by valid written agreement of the parties; and
   (5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

therefrom, were to be classified as marital property.

This Court in *In re Marriage of Rickard*, 818 S.W.2d 711, 718–19 (Mo.App.1991), held that even if an original partnership consisted entirely of non-marital assets, an enterprise purchased by use of income withdrawn from the partnership after marriage constituted marital property.

"Under Missouri's version of the Uniform Partnership Act, a partnership is not a legal entity separate from the individual partners." *Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670, 671 (Mo. banc 1993). Therefore, in the instant case, after payment of operating expenses related to the cave enterprise, whatever assets had accumulated in Husband's partnership prior to incorporation were undistributed income and profits derived from the operation of the cave enterprise. *See Rickard*, 818 S.W.2d at 718. Under § 358.260, "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

Husband argues that only "necessary operating assets," money used to keep the cave operations going, were transferred to the corporation from the partnership. He further asserts that since the partnership properties were exchanged for corporate stock, that under the provisions of § 452.330.2(2) Husband's shares of stock in the corporation constituted non-marital properties, "acquired by gift, bequest, devise, or descent."

■ Although not precisely quantified, the evidence shows that certain partnership income, considered marital property, generated after Husband acquired his interest in the partnership, went into the formation of the corporation. However, other unquantified partnership assets inherited by or gifted to Husband, such as equipment and machinery, considered non-marital, also went into the formation of the capital assets of Mark Twain Cave, Inc.

■ Under the "source of funds" rule, whether property is characterized as marital or separate depends on the source of funds used to purchase the property. *Hoffmann*, 676 S.W.2d at 824. It follows that since Mark Twain Cave, Inc., was in part created

from income generated by rentals of the real estate to the partnership, together with earnings from the operation of the cave partnership, of which husband owned a 32.2 percent interest, a proportion of Husband's shares of stock in the corporation should be classified as marital property, subject to appropriate division among the marital partners. *See Welch*, 821 S.W.2d at 561; *see also Bennett v. Bennett*, 706 S.W.2d 260, 262 (Mo.App.1986). Point One is well taken.

■ However, the mere fact that marital assets were commingled with non-marital assets of the Mark Twain partnership, does not transmute all of Husband's interest in the partnership assets into marital property as Wife contends in her second point. "Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property." § 452.330.4; *see also Doll v. Doll*, 819 S.W.2d 739, 740 (Mo.App.1991). Point Two is denied.

Therefore, it will be necessary to quantify the Husband's share of cash contributions derived from partnership income that went into the formation of the corporation and appraise the Husband's interest in the non-cash, non-marital property contributions to the corporation. In this manner, then, a determination may be made as to what portion of the Husband's interest in the corporation is attributable to the contribution of his non-marital property and what portion is attributable to marital property. *See Hill v. Hill*, 747 S.W.2d 718, 719 (Mo.App.1988). Consequently, a remand for additional evidence is required. *See Welch*, 821 S.W.2d at 561; *Ker v. Ker*, 776 S.W.2d 873, 879 (Mo. App.1989).

■ In consideration of Wife's third point of error, we note that prior to Husband's conveyance of a tenancy by the entirety interest in the real estate in 1990, the real property (but not its generated income) on which Mark Twain Caves, Inc., was operating the cave tourist attraction, unquestionably was Husband's non-marital property. "Dividends and interest from non-marital property received during coverture is marital property but the non-marital principal retains its

original status." *Bizzell v. Bizzell*, 697 S.W.2d 559, 563 (Mo.App.1985). Nevertheless, "[a] spouse may by agreement, either express or implied, or by gift, convert an item of separate property into marital property." *Rapp v. Rapp*, 789 S.W.2d 148, 150–51 (Mo.App.1990). "Nothing in the source of funds rule prevents the transmutation of an item of separate property into marital property." *Id.* at 151; *see also In re Marriage of Smith*, 785 S.W.2d 764, 766–67 (Mo.App. 1990); *Doll*, 819 S.W.2d at 741. When transfer of title to otherwise separate real estate is made from one spouse to another as tenants by the entirety, it is deemed to have been made as a gift and transforms the property from separate to marital, unless there is clear and convincing evidence to the contrary. *Hankins v. Hankins*, 823 S.W.2d 161, 162–63 (Mo.App.1992); *see also Smith*, 785 S.W.2d at 766; *Kramer v. Kramer*, 709 S.W.2d 157, 159 (Mo.App.1986). "The clear and convincing standard as defined by Missouri Courts of Appeals 'refers to evidence which instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true.'" *Clark v. Clark*, 919 S.W.2d 253, 255 (Mo.App.1996).

Husband candidly admits that he conveyed his interest in the Mark Twain Cave real estate to Wife in order to shield it from Husband's creditors, mainly the F.D.I.C. Wife also admits that this was Husband's motivating reason. While Husband insists that he did not intend to make a gift to Wife of the real estate, his statements go squarely against his actions. Generally, "if one spouse has caused his or her separate property to be transferred to both spouses jointly, mere self-serving testimony that it was not intended as a gift is entitled to little weight." *Clark*, 919 S.W.2d at 255.

■ Just as important, if this conveyance were assumed to be fraudulent, we note that while fraudulent conveyances may be void as against creditors, they are, nevertheless, valid as against the grantor and his privies. *Kahn v. Royal Banks of Mo.*, 790 S.W.2d 503, 506 (Mo.App.1990). "Courts of equity are chary of reaching out a helping hand to

those litigants who voluntarily convey their land in order to hinder, delay and defraud creditors." *Cook v. Mason*, 353 Mo. 993, 185 S.W.2d 793, 794 (1945). "When a party makes a conveyance for the purpose of hindering or defrauding a creditor, equity will ordinarily leave him where it finds him." *Id.*

We, therefore, conclude that the court erred when it classified Husband's interest in the 350 acres of real property located in Marion County as non-marital property.

■ In review of Wife's fourth point of error, we observe that § 452.335.1 mandates that the court may award maintenance if it finds that the spouse seeking it (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (2) is unable to support herself through appropriate employment. In reviewing a dissolution decree, we are mindful that the trial court has wide discretion regarding the award of maintenance. *Whitworth v. Whitworth*, 878 S.W.2d 479, 483 (Mo.App.1994). "As for the amount and duration of the maintenance award, [§ 452.335.2] sets out the relevant factors that the court must consider … after the court finds that the threshold test in [§ 452.335.1] is satisfied…." *Id.* Maintenance is awarded only to meet demonstrated needs. *Bybee v. Bybee*, 879 S.W.2d 793, 795 (Mo.App.1994).

[12, 13] In the instant case, Wife is a registered nurse and occupied the position of head nurse at a nursing home in her home town. At the time of trial she earned upwards of $40,000 a year. She was 54 and in good health. She did not present any evidence that prevented her from being employed. *See Carter v. Carter*, 869 S.W.2d 822, 833 (Mo.App.1994). However, in considering the needs of a spouse, the court is also to consider the marital properties awarded. *Id.* at 830–31; *Drikow*, 803 S.W.2d at 128. In view of our remand for the purpose of determining Wife's marital interest in Husband's previously designated non-marital assets, we likewise vacate that portion of the judgment in which no maintenance was awarded to Wife so that the trial court can reconsider the issue in light of the division of

marital property so ordered. *Fletchall v. Fletchall,* 896 S.W.2d 523, 524 (Mo.App.1995); *see also S.R. v. S.M.R.,* 709 S.W.2d 910, 915 (Mo.App.1986).

In her last point of error, Wife asserts trial court error in the division of marital property. In view of our remand of the case to determine the extent of other marital assets, it will be necessary to vacate that part of the judgment that made a division of the marital property. *Fletchall,* 896 S.W.2d at 524.

The judgment of the trial court dissolving the marriage of the parties herein is affirmed. The remainder of the judgment is reversed and remanded for further proceedings consistent with this opinion.

#### Case No. 20838

In this appeal, Wife asseverates that the trial court erred in denying her temporary maintenance pending the appeal and in denying her attorney fees on appeal.

■ This Court will uphold the order of the hearing court unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991). "The circuit court has jurisdiction ... to entertain a motion for temporary maintenance pending appeal in such amounts and on such terms as are just and proper in the circumstances authorized by § 452.315." *Goller v. Goller,* 758 S.W.2d 505, 510 (Mo. App.1988); *see also Nunn v. Nunn,* 644 S.W.2d 370, 372 (Mo.App.1982); *Noll v. Noll,* 286 S.W.2d 58, 61–62 (Mo.App.1956).

■ The purpose of awarding temporary maintenance in a dissolution of marriage action is to maintain the status quo pending final judgment. *Tisone v. Tisone,* 881 S.W.2d 647, 648 (Mo.App.1994). "We review an award of maintenance only for an abuse of discretion." *Alles v. Alles,* 916 S.W.2d 353, 354 (Mo.App.1996).

In her first point, Wife states that it was an abuse of discretion for the trial court to deny her an award of maintenance during the pendency of the appeal. She argues that her gross take home pay was $2,464.00 per month at the time of the post-judgment hearing and she shows a deficit in her income, as compared to expenses, of some $2,236.00 per month. She then asserts that Husband's gross income in 1994 amounted to $212,-008.47, five times greater than her income. Husband, on the other hand, maintains that Wife's earnings in 1994 amounted to some $40,000.00 and that this sum constituted a sufficient amount to maintain her during the course of the appeal. Husband also asserts that Wife overstates her reasonable expenses.

■ In determining whether a temporary maintenance award is warranted, a court must consider the factors set out in § 452.335. *Camden v. Camden,* 844 S.W.2d 75, 78 (Mo.App.1992); *Goller,* 758 S.W.2d at 510. The trial court has broad discretion in applying these factors and it determines the credibility of the witnesses and evaluates the merits of each party's expense claims. *Fox v. Fox,* 866 S.W.2d 501, 504 (Mo.App.1993).

■ Upon review of the entire record we conclude that the trial court abused its discretion in not ordering the payment of temporary maintenance to the Wife pending the appeal.

Wife has demonstrated that she has insufficient funds to continue to make payments to keep the marital home that she occupies from being foreclosed. The evidence shows that following the dissolution hearing she borrowed over $6,000.00 from the bank on a signature loan, solely to pay the interest that was due for six months. No periodic payments are being made against the outstanding principal. Currently she is making monthly payments of $533.51 on the separate signature loan.

Further, she has exhausted the bulk of a $16,000.00 savings account that she had accessed during the period of time prior to the dissolution hearing. Sizable amounts of her savings account were expended on litigation expenses. The Internal Revenue Service refund check set off to her after her dissolution hearing was unavailable to her because of this appeal. In short, because of the appeal she has been denied the use of significant

portions of the assets awarded to her. The trial court should have found that the denial of the use of her property due to the appeal created a need for maintenance that was not present at the time of the original judgment. *Wilson v. Wilson*, 822 S.W.2d 917, 925 (Mo. App.1991).

We, therefore, conclude that Wife has met the threshold requirement for maintenance under § 452.335.1. She presently lacks sufficient property to provide for her reasonable needs and although she supports herself through appropriate employment, her income is insufficient to maintain herself during the pendency of this litigation.

■ It is recognized by this Court that Husband's ability to pay does not automatically justify the award of an unwarranted maintenance order and the standard of living during the marriage does not automatically establish Wife's reasonable needs. *See Fox*, 866 S.W.2d at 504. Nevertheless, under the provisions of § 452.335.2 the hearing court must consider all relevant factors of the couples' relationship including, *inter alia*, the standard of living established during the marriage and the earning capacity of each spouse.

The evidence shows almost a five to one ratio in the Husband's income as opposed to Wife's. They were married 30 years and during the latter decade they lived, what could be termed, a gracious life style. Wife further testified that she no longer belonged to the country club and little monies were available for vacation and recreational activities. During the marriage, Wife worked diligently in and out of the home helping to support the family. Husband testified that he had no complaints of her conduct outside of the home.

■ If an appellate court believes the trial court abused its discretion, it is obligated to enter the judgment the trial court should have entered. *Misdary v. Misdary*, 737 S.W.2d 476, 480 (Mo.App.1987); *In re Marriage of Runez*, 666 S.W.2d 430, 433 (Mo.App.1983). The evidence shows that if the principal amount due on the marital home was amortized over a period of 20 years, the payment would approximate

$967.70 a month. We determine that this monthly amount represents a fair temporary maintenance award to Wife from Husband, pending the conclusion of this litigation and we order Husband to commence this payment to Wife effective January 18, 1996.

■ In review of Wife's second point that the trial court erred in not granting her attorney's fees, we conclude that the trial court committed no error.

■ An award of attorney's fees is within the sound discretion of the trial court and will only be disturbed on appeal upon a showing of an abuse of discretion. *In re Marriage of Swanson*, 904 S.W.2d 88, 93 (Mo.App.1995). To demonstrate an abuse of discretion by the trial court, the complaining party has the burden to show that the order for attorney fees is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and to indicate a lack of deliberation. *L.A.L. v. L.L.*, 904 S.W.2d 50, 55 (Mo.App. 1995).

The trial court has already awarded Wife the sum of $5,733.00 in fees at the dissolution hearing and the record shows that, although financially pressed, she has been meeting her litigation expenditures. We find no abuse of discretion in the trial court's determination. Point two is denied.

The judgment denying attorney fees to Wife is affirmed. The basis of Wife's request for temporary maintenance was the pendency of an appeal. With the issuance of our mandate in this case the premise of that request no longer exists. Wife is, however, entitled to an award of temporary maintenance in the amount of $967.70 a month from January 16, 1996, until the date of this Court's mandate. Accordingly, this case is remanded to the trial court to issue an order for temporary maintenance consistent with this opinion. Costs are assessed against Husband.

GARRISON and PREWITT, JJ., concur.